Argued and submitted July 22, reversed and remanded
with instructions September 21, 1983

## MENDEZ,
*Respondent,*

*v.*

## STATE OF OREGON,
*Appellant.*

(A7911-05644; CA A23413)

669 P2d 364

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, William F. Gary, Solicitor General, and Margaret E. Rabin, Assistant Attorney General, Salem.

Kathryn H. Clark, Portland, argued the cause for respondent. With her on the brief was Richard P. Noble, P.C., Portland.

Before Warden, Presiding Judge, and Young and Rossman, Judges.

WARDEN, P. J.

## WARDEN, P. J.,

This action for wrongful death was brought under the Oregon Tort Claims Act, ORS 30.270(1)(c), on behalf of decedent's parents against the State of Oregon by the personal representative of decedent's estate, after decedent died at the University of Oregon Health Sciences Center (UOHSC). The jury found for plaintiff and awarded damages of $300,000. The state appeals, claiming that certain evidence it offered was erroneously excluded and that the damages awarded should have been limited to $200,000.

Decedent, an 18-year-old woman, born December 6, 1959, came to the emergency department at UOHSC on Monday, December 26, 1977, complaining of severe headache and vomiting. The emergency room physician gave her pain medication and scheduled another appointment. At the follow-up appointment, on Wednesday, December 28, decedent reported blurring of vision and difficulty in opening one eye, in addition to the headache and nausea. After being examined, she was hospitalized, because the examining internist suspected increased intra-cranial pressure. After a CAT scan and electroencephalogram were performed, UOHSC doctors suspected that a brain tumor was obstructing the flow of cerebrospinal fluid between ventricles of decedent's brain, causing enlargement of one ventricle and increased intra-cranial pressure. Blood tests showed her white blood cell count to be elevated. An arteriogram was performed on Friday, December 30. It confirmed that decedent was suffering from obstructive hydrocephalus.

At 5:30 p.m. on Friday, December 30, the decedent's father gave his consent for the next diagnostic procedure, a pneumoencephalogram. Because the procedure requires surgical standby and the availability of an anesthetist, an operating room and an x-ray technician, it is not normally performed on weekends or holidays, except in cases of emergency. Decedent's physicians did not think that her condition required an emergency pneumoencephalogram. Instead, because the procedure was normally performed only on Mondays, Wednesdays and Fridays, and the following Monday (January 2) was a holiday, it was scheduled for Wednesday, January 4. Decedent, who had reached the age of majority, see ORS 109.510, signed consent forms for the pneumoencephalogram on January 3,

1978, at 11:45 a.m., and for a pneumoencephalogram followed by a ventriculo-peritoneal shunt, ventriculo-atrial shunt or craniotomy at 5:00 p.m. that same day. She died in the early morning of Wednesday, January 4, from an obstructive infection in her brain.

■    Defendant's first assignment of error is that the trial court erroneously excluded testimony by Dr. Friedberg about the vacillation of decedent's family members in consenting to the pneumoencephalogram.[1] Apparently, even after decedent's father gave his consent on Friday, members of her family, including her father, wavered in conversations with decedent's physicians through the weekend over whether the procedure should be performed. Defendant offered the evidence to show that the uncertainty of decedent's family was a factor contributing to the decision not to schedule an emergency pneumoencephalogram.

The record fails to support defendant's contention. As defendant's witness, Dr. Gallo, professor of neurosurgery at the Oregon Medical School, testified, the procedure could have been performed at any time after December 30 as an emergency, but not until Wednesday, January 4, as elective surgery. Defendant's doctors simply did not consider decedent's condition as one presenting an emergency, and nothing in the record indicates that the pneumoencephalogram would have been performed before January 4 if the decedent and her relatives had been unanimous in consenting to it. Consequently, it was not error for the trial court to exclude the testimony regarding the decedent's relatives' vacillation in consenting to those surgical procedures.

Defendant also contends that it was error not to have allowed its motion to reduce plaintiff's recovery from $300,000 to $200,000. The Oregon Tort Claims Act limits recovery against a public body. ORS 30.270(1) provides:

> "Liability of any public body or its officers, employes or agents acting within the scope of their employment or duties on claims within the scope of ORS 30.260 to 30.300 shall not exceed:
>
> "* * * * *

---

[1] The court excluded the evidence because defendant had not alleged that the parents of the decedent were contributorily negligent.

"(b) $100,000 to any claimant for all other claims arising out of a single accident or occurrence.

"(c) $300,000 for any number of claims arising out of a single accident or occurrence.

"* * * * *"

Plaintiff in this case, the personal representive of decedent's estate, alleged in his complaint that decedent's mother and father had suffered a loss of decedent's companionship and society and that decedent herself underwent pain and suffering before her death. Defendant contends that only the decedent's parents are "claimants" under ORS 30.270(1)(b) and, therefore, recovery is limited to $200,000. Plaintiff argues that the personal representative, suing on behalf of the estate itself, is himself a claimant and, therefore, recovery of the $300,000 limit is allowed under ORS 30.270(1)(c). Resolution of this issue requires an examination of the history of Oregon's wrongful death statute, particularly the amendments by Or Laws 1973, ch 718.

As originally enacted, Oregon's wrongful death statute did not allow recovery for any loss of companionship suffered by any particular individual or for pain and suffering of the decedent, but only for the pecuniary loss sustained by the decedent's estate. Deady, General Laws of Oregon 1845-1864 § 367; *Carlson v. Oregon Short Line Ry. Co.*, 21 Or 450, 28 P 497 (1892). In 1939 the statute was amended to provide for an action on behalf of certain designated beneficiaries but retained the provision permitting an action on behalf of the estate itself. The amended statute provided for an action by the decedent's personal representative

"for the benefit of the widow or widower and dependents *and in case there is no widow or widower, or surviving dependents, then for the benefit of the estate of the deceased * * *.*" Or Laws 1939, ch 466. (Emphasis supplied.)

That language remained essentially unchanged until 1973, although a 1947 amendment provided the manner of distribution of any recovery made on behalf of a surviving spouse or decedent. Or Laws 1947, ch 461, codified as ORS 30.030. The 1947 amendment was silent as to the distribution of any recovery had on behalf of the estate itself.

In 1973, the wrongful death statute was substantially revised. Additional kinds of damages were made recoverable, including damages for disability, pain and suffering of the decedent prior to death, damages for the loss to decedent's spouse, children and parents of the society, companionship and services of the decedent and punitive damages.[2] In *Christensen v. Epley,* 287 Or 539, 601 P2d 1216 (1979), the court held that the widow and children of the decedent had individual claims for the pecuniary loss and the loss of the decedent's society, companionship and services by each of them under ORS 30.020(2)(d) and ORS 30.270 and that the personal representative acts only as a nominal party and is not a single "claimant" within the meaning of ORS 30.270(1)(b). *Christensen* did not address a situation, such as the present one, in which both loss of society under ORS 30.020(2)(d) *and* pain and suffering to the decedent prior to death under ORS 30.020(2)(b) are claimed as damages.

■ If, as plaintiff asserts, the personal representative can be an independent claimant under ORS 30.270(1)(c) when damages for pain and suffering to the decedent are claimed under ORS 30.020(2)(b), it would follow that, if a decedent leaves no surviving spouse, children, parents or other individuals who would be entitled to inherit the decedent's personal property, the personal representative could still maintain a cause of action in his own name on behalf of the state, to

---

[2] ORS 30.020(2) reads:

"In an action under this section damages may be awarded in an amount which:

"(a) Includes reasonable charges necessarily incurred for doctors' services, hospital services, nursing services, other medical services, burial services and memorial services rendered for the decedent;

"(b) Would justly, fairly and reasonably have compensated the decedent for disability, pain, suffering and loss of income during the period between injury to the decedent and the decedent's death;

"(c) Justly, fairly and reasonably compensates for pecuniary loss to the decedent's estate;

"(d) Justly, fairly and reasonably compensates the decedent's spouse, children and parent for pecuniary loss and for loss of society, companionship and services of the decedent; and

"(e) Separately stated in finding or verdict, the punitive damages, if any, which the decedent would have been entitled to recover from the wrongdoer if the decedent had lived."

which any damages recovered would escheat. However, two changes made in the statute in 1973 demonstrate that no such cause of action may be maintained. First, the 1973 act deleted the language emphasized above in the quotation from the previous statute that expressly provided for an action "for the benefit of the estate" if the decedent left no spouse or dependents. Second, the statute now provides that an action may be brought only for the benefit of the decedent's heirs.[3] We conclude, therefore, that if a decedent leaves no heirs, the personal representative of his estate has no authority to maintain an action for wrongful death against the tortfeasor. *See* Note, *Wrongful Death Actions in Oregon: New Developments,* 10 Will L J 217, 222 (1974).

■■    On the basis of our conclusion that the personal representative could not be a "claimant" in a case in which the decedent leaves no heirs, we hold that he does not become one solely by virtue of suing on behalf of the decedent's heirs. As stated in *Christensen v. Epley, supra,* he acts only as a nominal party. The only persons "entitled to inherit the personal property of the decedent" in this case are her parents. The recovery of each of them is limited to $100,000 by ORS 30.270(1)(b). We therefore reverse and remand for reduction of the judgment to $200,000.

Reversed and remanded with instructions to reduce the judgment to $200,000.

---

[3] The action may be brought "for the benefit of the decedent's surviving spouse, surviving children, surviving parents and other individuals, if any, who under the law of intestate succession of the state of the decedent's domicile would be entitled to inherit the personal property of the decedent * * *." ORS 30.020(1).